IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GOLD BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04-0565-CV-W-FJG |
| | ) |
| POST HILL GREENS, L.L.C., et al. | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Currently pending before the Court is Gold Bank's Supplemental Motion for Summary Judgment (Doc. # 128), Edgar Barth's Motion to Dismiss (Doc. # 130) and Gold Bank's Motion to Substitute Party (Doc. # 133).

**I. BACKGROUND**

Edgar Barth[1], Eugene Feldhausen and Mark Kalin were all members of Post Hill Greens, L.L.C. ("PHG"). Each member owned a 33 1/3 ownership share in the company. PHG was formed in 1999 to own and further develop real estate in a residential condominium development in Platte County, Missouri known as Post Hill Greens. Gold Bank loaned money to PHG beginning in June 2000 to construct new condominium units in Post Hill Greens. All of the members guaranteed PHG's indebtedness to Gold Bank. At the time Gold Bank first loaned money to PHG in June 2000, Barth also was the managing member of Prospect North, LLC which had

---

[1] On February 27, 2006, counsel for Edgar Barth filed a Suggestion on the Record notifying the Court that Mr. Barth had died on February 25, 2006.

previously obtained a loan from Gold Bank, which Barth had also guaranteed. Barth formed Prospect North to develop a mixed use real estate project that involved commercial, retail and residential uses. This project is also referred to as the Renaissance development. Barth initially was the sole member of Prospect North and employed Kurt Degenhardt to work for Prospect North. In August 2001, Barth assigned Gold Bank his interests in Prospect North to the extent of $750,000 as additional security for Gold Bank loans to PHG. In December 2001, Barth was injured in a fall and as a result was required to undergo dialysis treatment three times a week. His ability to work was substantially reduced after his accident. Barth and Degenhardt each owned a 50% interest in each of the Renaissance entities prior to Barth's sale of his interests to Degenhardt effective October 20, 2003. After the sale, Degenhardt owned 100% of Prospect North and all of the Renaissance entities. In September 2002, PHG was behind on its interest payments to Gold Bank and did not have any cash to continue the development of Post Hill Greens. In October 2002, Degenhardt and Barth had discussions concerning Degenhardt buying out Barth. The parties reached an oral agreement that Degenhardt would pay Barth a cash price of $750,000 and that Barth would not have to repay any loans or advances he had received from Prospect North/Renaissance. This agreement however was conditioned on Gold Bank agreeing to release Barth from his liability to Gold Bank for the Prospect North/Renaissance loans. The Bank agreed to this condition. Barth intended to use some portion of the $750,000 buyout money to assist with the Post Hill Greens project. Degenhardt obtained the funds for the $750,000 cash purchase price from funds available to Prospect North/Renaissance as a result of loans from Gold Bank. The documentation

2

necessary to finalize the sale of Barth's interest in the Prospect North/Renaissance entities was not completed however until October 20, 2003. However, prior to that time, $435,253.91 of the $750,000.00 purchase price was disbursed on behalf of Degenhardt by Prospect North to or for the benefit of Mr. Barth. This disbursement consisted of four payments of funds from Prospect North directly to Barth or on behalf of Barth, to a PHG Account at Gold Bank for payment of expenses including interest payments on loans to Gold Bank. These payments were as follows:

1. $33,140.16 paid by check to Barth;
2. $250,000 transferred from a Renaissance Plaza loan account at Gold Bank to the PHG Account on November 25, 2002;
3. $117,608.43 transferred from a Renaissance Plaza account at Gold Bank to the PHG Account on April 30, 2003 and
4. $34,505.32 transferred from a Renaissance Gardens account at Gold Bank to the PHG Account on June 26, 2004.

In April 2003, PHG entered into an agreement with Gold Bank to renew and consolidate its loans. PHG executed a Promissory Note on that date in the sum of $4,776,063.44 which Note was dated effective December 15, 2002. This note matured on June 15, 2003. Barth, as managing member of PHG executed the renewal of this Promissory Note on June 15, 2003 and the note maturity date was extended until December 15, 2003. PHG failed to pay the interest for October, November and December 2003. PHG failed to pay all the principal due on the Note and Gold Bank made a written demand on PHG, Barth, Kalin and Feldhausen for payment of all sums due. Payment was not made and by letter dated June 23, 2004 Gold Bank gave notice of the Trustee's Sale of real property that secured the note. The sale was held on

3

August 12, 2004. Gold Bank made the only bid at the sale in the sum of $2,243,000.00. Gold Bank argues that this bid exceeded the appraised value of the property by $200,000.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

## III. DISCUSSION

On March 31, 2006, the Court entered an Order granting Gold Bank's Motion for

4

Summary Judgment on Counts I, II and I of Barth's Counterclaims and provisionally denying Gold Bank's Motion for Summary Judgment on Count IV of the Counterclaim. The Court asked the parties to file further briefing on Count IV of Barth's Counterclaim - whether Gold Bank had violated the anti-tying provisions of the Bank Holding Company Act. The parties provided those briefs and the Court is now ready to address this issue.

### A. Supplemental Motion for Summary Judgment

In Count IV of the Counterclaim, Barth alleges that Gold Bank violated the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. §§ 1972 and 1975 in the following ways: 1) requiring Barth to transfer his membership interest in the Renaissance North entities to Degenhardt as a condition to secure financing from Gold Bank to PHG; 2) Providing Barth with a line of credit for $750,000; and after providing the line of credit, 3) Making three unauthorized withdrawals from the line of credit to pay PHG indebtedness. These withdrawals include: a) $250,000 on November 26, 2002; b) $117,608.43 on April 30, 2003 and c) $34,505.32 on June 26, 2003.

In the previous Order, the Court determined that Gold Bank did not require Barth to transfer his membership interest in Renaissance North to Degenhardt. The Court also determined that Gold Bank did not provide Barth with a $750,000 line of credit. The Court however determined that there was disputed testimony regarding whether the transfers from the Renaissance North accounts to PHG's account were done with the knowledge and consent of Barth and whether these actions were usual in the banking industry and benefitted Gold Bank.

Gold Bank argues that it did not enter into any kind of tying arrangement with

5

Barth. Gold Bank states that the Act prohibits a Bank from extending credit or performing a service in exchange for an impermissible condition or requirement. Gold Bank states that Barth merely alleges that Gold Bank transferred funds from his line of credit without this authorization. Gold Bank states that Barth does not allege nor is there any evidence of the existence of an arrangement tied with another arrangement.

In response, Barth alleges that there is no dispute that 1) monies were transferred from the Prospect North Entities for the benefit of PHG and 2) Gold Bank recognized that this required some form of approval from Barth. Thus, Barth argues that as a result, genuine issues of fact exist as to whether there was a "tying" arrangement created by Gold Bank's actions in this case. Barth also argues that there are genuine issues of material fact as to whether Gold Bank's conduct benefitted the bank. Barth states that if it is assumed that he did not authorize any transfers which "tied" the Prospect North entities to PHG, then the transfers had to have been made for the benefit of Gold Bank.

The Bank Holding Company Act states in part:

(1) A Bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement -

(A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service;

(B) that the customer shall obtain some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company;

(C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit or trust service;

6

> (D) that the customer provide some additional credit, property, or service to a bank holding company of such bank, or to any other subsidiary of such bank holding company; or
>
> (E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit.

12 U.S.C. § 1972(1).

In Doe v. Northwest Bank Minnesota, N.A., 107 F.3d 1297, 1304 (8th Cir. 1997), overruled on other grounds by Humana Inc. v. Forsyth, 525 U.S. 299 (1999), the Court stated, "[t]he plaintiff in a action under this section must show that the bank imposed a tie, that the practice was unusual in the banking industry, that it resulted in an anticompetitive arrangement, and that it benefitted the bank." In the instant case, Barth alleges that the tie which the bank imposed was that monies from the Prospect North entities had to be transferred to the PHG accounts. However, the Court does not find that this constitutes a tying arrangement. In Palermo v. First Nat. Bank and Trust Co. of Oklahoma City, 894 F.2d 363 (10th Cir. 1990), the bank conditioned the renewal of the current loans to the plaintiff on an agreement that he would guarantee past debts of a company for whom the plaintiff was a main shareholder. The Court in that case found that the bank's actions constituted a traditional banking practice that was imposed to protect the bank's security and that it did not violate the Bank Tying Act. The Court in Palermo stated:

> [t]he bank in this case did no more than evaluate its entire existing relationship with the plaintiffs when it conditioned renewal of Palermo's credit upon obtaining a guarantee of the Cup Exploration indebtedness. We emphasize what this case is *not* about - a bank requiring one customer to guarantee the debt of another **unrelated** or **incidentally**

7

>    **related customer**. To the contrary, Palermo, an oil and gas operator and
>    horse breeder, was involved in several commercial activities which
>    required funds. The fact that Palermo did not exercise day-to-day control
>    over all of these activities is insufficient to withstand summary judgment.

Id. at 370. Similarly, in New England Company v. Bank of Gwinnett County, 891 F.Supp. 1569, 1575 (N.D.Ga. 1995), the Court observed:

> Courts repeatedly have held that a bank's conduct in conditioning the
> further extension of credit on the debtor's providing additional security for
> the loan is not actionable under the BHCA [Bank Holding Company Act.].
> . . . Conditioning the extension of credit on measures designed to insure
> that the bank's investment is protected is well within traditional banking
> practices, and is not the kind of unusual or anti-competitive practice that
> gives rise to a BHCA cause of action.

Id. at 1575 (internal citations omitted).

In the instant case, Barth was a one-third shareholder in PHG. Gold Bank loaned money to PHG, and Barth provided a personal guarantee to Gold Bank. Barth was also the managing member of Prospect North, which had previously obtained a loan from Gold Bank, which Barth had also guaranteed. The Court finds that even if Gold Bank required Barth to transfer money from the Prospect North accounts to pay off interest on the PHG's loans, this is not an improper tying arrangement. Rather, this was an effort by Gold Bank to protect its investment. As noted above, "courts have upheld a wide range of conditions placed upon debtors to protect the investment of the creditor-bank." New England Company, 891 F.Supp. at 1575. Accordingly, the Court hereby **GRANTS** Gold Bank's Supplemental Motion for Summary Judgment on Count IV of Barth's Counterclaim. As the Court noted in its previous Order, Gold Bank's claims - Count I (Breach of Contract by PHG) and Count II (Breach of Guaranty by Barth) are the same claims which compromised Barth's counterclaims. As the Court has now

8

determined that Barth cannot recover on any of his Counterclaims, the Court hereby **GRANTS** Gold Bank's Motion for Summary Judgment on Counts I and II against PHG and Barth.

### B. Barth's Motion to Dismiss Pursuant to Fed.R.Civ.P. 25

Edgar Barth's counsel has moved to dismiss Count II of Gold Bank's Complaint against Barth and Count IV of Barth's Counterclaim against Gold Bank because a motion for substitution of parties was not filed within ninety days of the date the Suggestion of Death was filed with the Court. Fed.R.Civ.P. 25(a) provides:

(1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

(2) In the event of the death of one or more of the plaintiffs or of one or more of the defendants in an action in which the right sought to be enforced survives only to the surviving plaintiffs or only against the surviving defendants, the action does not abate. The death shall be suggested upon the record and the action shall proceed in favor of or against the surviving parties.

Edgar Barth passed away on February 25, 2006. Barth's counsel filed a Suggestion of Death with this Court on February 27, 2006. On June 1, 2006, Barth's counsel filed the Motion to Dismiss Barth's Counterclaim and Gold's Bank's claim against Barth because a motion for substitution of parties had not been filed and more than ninety days had passed since the Suggestion of Death had been filed. On June

9

16, 2006, counsel for Gold Bank filed Suggestions in Opposition to Barth's Motion to Dismiss and also filed a Motion to Substitute the Personal Representative of the Estate of Edgar Barth as a party for Decedent Edgar Barth or Alternatively to Enlarge the Time to File the Motion for Substitution.

Gold Bank argues that the Suggestion of Death which was filed by Barth's counsel on February 27, 2006, was not valid and did not trigger the running of the ninety day period to file a motion to substitute. Alternatively, Gold Bank argues that even if the Suggestion of Death is deemed valid, Gold Bank's failure to timely file a Motion to Substitute the Personal Representative was the result of excusable neglect. Gold Bank argues that the Suggestion of Death was not valid because it was filed by Barth's counsel, who is not a party and also because it did not provide the name of a representative of Bath's estate who could be substituted. Gold Bank states that Fed.R.Civ.P. 25 requires that the Suggestion of Death must be filed either by a party or representative of the party's estate. In Hilsabeck v. Lane Co., 168 F.R.D. 313 (D.Kan. 1996), the Court stated:

> Counsel did not purport to make the suggestion of death on behalf of the decedent's heirs or successors or as a representative of his estate. [T]he attorney for the deceased party may not make the suggestion of death since he is not himself a party to the action and, since his authority to represent the deceased terminated on the death, he is not a representative of the deceased party of the sort contemplated by the rule. . . . Additionally, the suggestion of death does not appear to have been served on the successors or representatives of [the decedent] who are not parties to this action in the manner provided by Fed.R.Civ.P. 4, as Rule 25(a)(1) requires. . . . Accordingly, the time for filing a motion to substitute a proper party has not run.

Id. at 314 (internal citations and quotations omitted).

In the instant case, counsel for Edgar Barth also does not appear to have

properly served the Suggestion of Death upon the successors or representatives of Mr. Barth. The Certificate of Service shows only that he served counsel for plaintiff. Accordingly, the Court finds that the Suggestions of Death were not valid as they were not properly served upon the successors and representatives of Barth's estate and also because they were filed by Barth's counsel, who did not have authority to do so. On July 21, 2006, Gold Bank filed its Supplemental Suggestions in Support of its Motion to Substitute the Personal Representative of the Estate of Edgar Barth as a Party for Decedent Edgar Barth. Gold Bank states that on July 21, 2006, the Clay County Probate Court issued Letters Testamentary to Marilyn Barth and appointed her Personal Representative of the Estate of Edgar Barth, Deceased. Gold Bank states that Marilyn Barth is thus the proper party to be substituted for the decedent. Marilyn Barth has filed an Objection to the Motion to Substitute, stating that all of the property of Edgar Barth, which would be property of his estate is exempt from the claim of creditors pursuant to Mo.Rev.Stat. §§ 474.250 and 474.270. Ms. Barth also argues that it would be fundamentally unfair to embroil the estate and herself in this cause of action, when Gold Bank did not timely file a motion to substitute. The Court does not agree and as previously discussed, the ninety day time limit was never triggered because the Suggestion of Death was not valid. Accordingly, the Court find that as the Personal Representative of the Estate, Ms. Barth is the proper party to be substituted. Accordingly, the Court hereby **GRANTS** Gold Bank's Motion to Substitute Marilyn Barth, Personal Representative of the Estate of Edgar L. Barth, for decedent Edgar L. Barth in

this action (Doc. # 133). Edgar Barth's Motion to Dismiss Count II of Gold Bank's Complaint and Count IV of Barth's Counterclaim is hereby **DENIED** (Doc. # 130).


Date: October 6, 2006  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
United States District Judge